| | |
|---|---|
| **SAXENA WHITE P.A.**<br>Joseph E. White, III<br>jwhite@saxenawhite.com<br>Lester R. Hooker (SBA 241590)<br>lhooker@saxenawhite.com<br>2424 N. Federal Hwy, Suite 257<br>Boca Raton, FL  33431<br>Tel: (561) 394-3399<br>Fax: (561) 394-3382 | **RYAN & MANISKAS, LLP**<br>Richard A. Maniskas<br>rmaniskas@rmclasslaw.com<br>995 Old Eagle School Rd., Ste. 311<br>Wayne, PA 19087<br>Tel:  (484) 588-5516<br>Fax:  (484) 450-2582 |

*Proposed Co-Lead Counsel for Noel Upfall*

**BRAUN LAW GROUP, P.C.**
Michael D. Braun (167416)
service@braunlawgroup.com
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000
Fax: (310) 836-60106

*Proposed Liaison Counsel*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SID MURDESHWAR, Individually and On Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>vs.<br><br>SEARCHMEDIA HOLDINGS LIMITED, f/k/a IDEATION ACQUISITION CORP., ROBERT N. FRIED, PHILLIP FROST, RAO UPPALURI, STEVEN D. RUBIN, GLENN HALPRYN, THOMAS E. BEIER, DAVID H. MOSKOWITZ, SHAWN GOLD, GARBO LEE, PAUL CONWAY, QINYING LIU, EARL YEN, and JENNIFER HUANG,<br><br>              Defendants. | Case No. 2:10-cv-06794-DSF (JEM)<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO  THE COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>Date: December 13, 2010<br>Time: 1:30 PM<br>Courtroom: 840 |

## I. PRELIMINARY STATEMENT

Proposed Lead Plaintiff Dr. Noel Upfall ("Dr. Upfall") respectfully submits this memorandum of law in opposition to the competing motions for appointment as Lead Plaintiff and in support of Dr. Upfall's motion for (1) appointment as Lead Plaintiff in the above-captioned action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and (2)  approval of Upfall's selection of Saxena White P.A. ("Saxena White") and Ryan & Maniskas LLP ("R&M") as Co-Lead Counsel, and Braun Law Group ("Braun") as Liaison Counsel.

## II. INTRODUCTION

On November 15, 2010, three competing motions for appointment as Lead Plaintiff were filed in this Court.  In addition to Dr. Upfall's application for appointment as lead plaintiff, competing motions were filed by: (1) Cattolica Partecipazioni S.p.A. ("Cattolica"), and (2) Mehmet Canga ("Canga").  All movants agree that, pursuant to the PSLRA, the movant with the largest financial interest in the relief sought by the Class should be the presumptive lead plaintiff.  See 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  However, there is also no dispute that this presumption is rebuttable by demonstrating that the presumptively "most adequate plaintiff" cannot fairly and adequately represent the class, or is "subject to unique defenses".  15 U.S.C. §78(a)(3)(B)(iii)(II).

While Cattolica claims to have the largest financial interest out of all movants, this factor alone does not automatically guarantee that their motion will be granted as a "movant's financial interest is just a beginning point" in a court's inquiry regarding the most appropriate lead plaintiff.  *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D.Va. 2003) ("[A] movant's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to represent the class."); *see also In*

1

*re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 454-55 (S.D.Tex. 2002) (the court declined to appoint as lead plaintiff the movant with the largest financial losses).

Moreover, despite the size of Cattolica's claimed losses, Cattolica should not be appointed Lead Plaintiff as it is a foreign investor and subject to a unique Rule 23 *res judicata* defense. Numerous courts have held that foreign movants are not the most adequate lead plaintiffs despite claiming to possess the largest financial interest in comparison to other movants.[1] Indeed, if Cattolica is appointed Lead Plaintiff, Defendants will likely argue that this case should be doomed to perish at class certification. With Cattolica no longer in consideration, Dr. Upfall represents the next largest financial interest. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical."). The remaining movant, Canga, claims a much smaller financial interest than Dr. Upfall and his motion should be denied on that basis. For these reasons, and as set forth herein in further detail, Dr. Upfall's motion should be granted in all respects and the competing motions should be denied.

**III. ARGUMENT**

**A. The Procedural Requirements Pursuant to the PSLRA**

As Dr. Upfall's opening memoranda explained in great detail, the PSLRA sets forth a strict, detailed procedure for the selection of a lead plaintiff in federal securities class actions. *See* 15 U.S.C. §78u-4(a)(3) and 15 U.S.C. § 77z-

---

[1] *See e.g.*, *Borochoff v. Gaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) ("prudence cautions that the [res judicata] arguments for [ ] exclusion are substantial, and in light of that risk it would be improvident to appoint the German Institutional Investor Group as lead plaintiff at this point"); *see also In re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007) (refusing to certify a similarly situated investor under Rule 23, reasoning "plaintiffs have not shown a probability that German courts will give *res judicata* effect to a judgment in this case"); *In re Discovery Labs. Sec. Litig.*, Case No. 2:06-cv-1820, at *5 n.2 (E.D. Pa. July 25, 2006) (denying lead plaintiff motion of a German institutional investor, even though it claimed the largest financial interest, and stating that "the res judicata effect of a judgment in its favor is uncertain.") (attached hereto as Exhibit A).

2

1(a)(3)(A)(i). There is no dispute that the requisite notice was issued to the Class following the filing of the Action, and that all three movants have timely filed motions for appointment of Lead Plaintiff pursuant to those procedures. *See* 15 U.S.C. §78u-4(a)(3)(A) and (B).

The next step in the PSLRA statutory scheme is for the Court to appoint as lead plaintiff the movant or movants that the Court determines to be most capable of adequately representing the interests of Class members. 15 U.S.C. §78u-4(a)(3)(B)(i) and 15 U.S.C. § 77z-1(a)(3)(B)(i).  While the Court adopts a presumption that the lead plaintiff applicant with the largest financial interest in the litigation is the presumptive most adequate lead plaintiff, that presumption may be rebutted "upon proof" from a member of the class that the presumptive lead plaintiff will not fairly and adequately protect the interests of the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Based on the express provisions of the PSLRA, as discussed in detail below, Dr. Upfall is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

### B. Upfall Has the Largest Financial Interest of Any Applicant That Also Satisfies the Requirements Of Rule 23

Based upon the submissions of the respective movants, Dr. Upfall is the "***most*** adequate plaintiff." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)-(II) (emphasis added).  While Dr. Upfall does not dispute that Cattolica claims a larger loss in its lead plaintiff application, Dr. Upfall's substantial financial interest in this litigation is the largest of any *bona fide* movant.  Dr. Upfall has suffered losses on his purchases of SearchMedia common stock during the Class Period of $749,499.76, which is a considerable amount for an individual investor.  Indeed, Dr. Upfall's losses of close to three-quarters of a million dollars represent a far greater

3

CASE NO. 2:10-CV-06794-DSF (JEM)
MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT OF
LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

percentage of his investment portfolio than an approximate $2 million loss for a foreign institutional investor such as Cattolica.[2]  Moreover, Dr. Upfall is a general family physician based in Highland Park, Michigan who is a sophisticated investor perfectly capable of representing the best interests of the Class.

Appointing as lead plaintiff a U.S.-based doctor who is devoid of any unique defenses, who possesses a substantial financial interest in the outcome of the litigation, and who has demonstrated a willingness and ability to vigorously prosecute this action on behalf of the Class, ensures that Class members' interests are adequately protected by an active and interested representative.  Indeed, these are the very traits that form the foundation of the PSLRA's criteria in appointing lead plaintiffs in securities class actions.  Accordingly, Dr. Upfall is the only lead plaintiff applicant that satisfies Rule 23 as he is not subject to unique defenses that threaten to overtake the focus of the litigation and which may irreparably damage the interests of the Class.  Moreover, his claims are typical of the claims of the Class, arise from the same course of events, and are based on the same legal theories as the claims of all other investors in SearchMedia stock.  Thus, Dr. Upfall's motion should be granted.

### C.     Cattolica Is Subject to Unique Defenses

Although Cattolica claims that its total losses are greater than the other two movants, Cattolica suffers from a critical unique defense which courts across the country have consistently found to be a proper basis for denying a movant's Lead Plaintiff motion, despite the size of that particular movant's losses.  Specifically, courts are unwilling to appoint foreign investors such as Cattolica as lead plaintiff—particularly where the foreign investor seeks to serve as lead plaintiff on a stand-alone basis as opposed to serving in a group with domestic investors—due

---

[2] In calculating its financial losses, Cattolica included those losses incurred from warrants of $1,119,960, in addition to common stock losses totaling $1,282,916.  Comparing Upfall's common stock losses of approximately $750,000 to Cattolica's common stock losses, the alleged difference shrinks dramatically.

4

1 to uncertainties regarding whether a court would later give *res judicata* effect of a judgment in favor of defendants.  *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *10, n.8 (N.D.Cal. 2008); *Borochoff v. Glaxosmithkline, PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003).

In *Eichenholtz*, Judge Patel found that a group of foreign investors was not fit to be appointed as lead plaintiff, and discussed her concerns as to the *res judicata* effect and considerations involved in appointing foreign lead plaintiffs:

> [I]t is unclear if this litigation would be given res judicata effect in Israel. . . .  Finally, the entity's physical distance from this forum may create practical difficulties that may make it difficult for it to be the class representative.  Since individuals at Prisma Provident may have to testify at trial, it could be difficult for them to attend a long trial in its entirety.  *See In re Network Assocs*, 76 F.Supp. at 1030.
>
> Consequently, Prisma Provident would likely not have been appointed lead plaintiff even if it had moved for the same.  Though the court finds that any one of the above reasons may not be dispositive, when taken as a whole, they form a solid, persuasive basis to rebut the lead plaintiff status.  The same rationale applies to the other individual members of the Israeli Group as well as the Group as a whole.

2008 WL 3925289, at *10 n.8.  *In Borochoff*, Judge Stanton echoed Judge Patel's hesitations and denied the motion of a group of German investors to be appointed Lead Plaintiff, due to his concerns that "any judgment in this action (whether favoring plaintiffs or defendants) may be refused enforcement by a German court."  246 F.R.D. at 203.  Judge Stanton also largely based his decision on "uncontradicted affidavits that England, the Federal Republic of Germany, Switzerland, *Italy*, and France would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens."  *Id*. at 204 (emphasis added).  Further, Judge Stanton stated:

> The most serious argument against the German Institutional Investor Group in this respect is that all those who purchased in Germany may have to be excluded from the class, because any judgment in this

5

> action (whether favoring plaintiffs or defendants) may be refused enforcement by a German court. If this Court's judgment on the merits neither protects a prevailing defendant against relitigation in Germany, nor grants a prevailing German plaintiff an enforceable damage judgment, then for those litigants a class action is not "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Rather, it is a waste, and their presence in the class (with its associated problems of notice-giving in Germany) may inflict burdens on the administration of the action.

*Id*. at 203. Judge Stanton went on to conclude:

> This is not the proper occasion to determine whether the German Institutional Investor Group will be in the class. That will come later, but prudence cautions that the arguments for its exclusion are substantial, and in light of that risk it would be improvident to appoint the German Institutional Investor Group as lead plaintiff at this point.

*Id*. at 205.

In *Royal Ahold N.V.*, Judge Blake also refused to appoint a foreign investor as lead plaintiff, finding that:

> Adding to the concerns about subject matter jurisdiction over Union's claims is the question of the res judicata effect of a judgment in favor of Royal Ahold in this class action. Foreign courts might not recognize or enforce such a decision from an American court, which would allow foreign plaintiffs in the class to file suit against the defendant again in those foreign courts. This factor must be considered in determining whether a class action is the superior method of litigating a particular case, although it is not determinative. *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 134-35 (S.D.N.Y.2001). A strong possibility or near certainty that a foreign court will not recognize a judgment in favor of the defendant as a bar to the action of its own citizens may be the basis for eliminating foreign purchasers from the class. *Bersch,* 519 F.2d at 996. No specific evidence has been produced thus far regarding which foreign courts may or may not recognize a decision of this court. It is possible, however, that Union and other foreign purchasers might be eliminated from the class at the certification stage because a judgment would not be enforceable. *See id.* at 996-97.

219 F.R.D. at 352.

Moreover, in concluding that a movant's lead plaintiff application is tainted by the threat of a unique defense, a court does not have to determine that such defense is likely to succeed. *See In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *6 (N.D.Ill. 2005) ("The PSLRA…provides that we ask simply whether

6

[a proposed lead plaintiff] is likely to be 'subject to [a] defense…*we do not have to determine that the defense is likely to succeed*.") (emphasis added).  Here, there is a strong chance that Defendants will likely later argue that Cattolica is uncertifiable as a class representative under Rule 23, thus placing in jeopardy the viability of the class's claims.  It would be imprudent to take such a gamble in appointing Cattolica as lead plaintiff, especially given that Dr. Upfall has a substantial financial interest in the litigation, has demonstrated his willingness to vigorously prosecute the action, and is free from the various concerns which plague Cattolica's lead plaintiff candidacy.

In addition to the *res judicata* concerns inherent in appointing Cattolica as lead plaintiff, there are additional practical considerations that weigh heavily in favor of appointing Dr. Upfall as lead plaintiff here.  Cattolica is based in Italy and this action is currently pending in the Central District of California—a distance of over 6,000 miles.  Cattolica's remoteness from the action may create difficulties in its ability to adequately serve as a class representative, particularly as the litigation progresses into discovery and trial.  Courts have found that movants are inadequate representatives when their availability to attend trial or deposition is limited.  *See Weikel v. Tower Semiconductor Ltd.,* 183 F.R.D. 377, 396-97 (D.N.J. 1998) (finding a movant who required six to seven weeks' notice to testify at trial to be an inadequate class representative) (citing *Cammer v. Bloom,* No. 88-CV-2458, Slip. Op. at 48-49 (D.N.J. August 18, 1989) (potential class representative found inadequate because of possible restrictions in traveling to trial).

In *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d at 1029 (N.D. Cal. 1999), the practical problems of a foreign investor serving as lead plaintiff resulted in the court's denial of the motion made by two European financial institutions.  After discussing the burdens of traveling to make court appearances, among other things, the court held that neither European institution was adequate:

7

> Finally, both ING and KBC are foreign organizations. They are distant. They were the only candidates not to attend the lead plaintiff hearing even though the Court requested all candidates to do so by order dated October 13, 1999. The distances involved and some differences in business culture would impede their ability to manage and to control American lawyers conducting litigation in California. At trial, the representative plaintiff would normally testify and attend. In a long trial, it would be obviously difficult for ING or KBC to attend in its entirety. The Court certainly does not say that a foreign investor could never qualify. But these factors, when added to the others set forth above, reinforce the Court's conclusion that neither KBC nor ING can fairly and adequately represent the class.

*Id.* at 1030.

While Cattolica will likely cite to actions where foreign institutions were appointed as lead plaintiffs, it should be noted that, here, Cattolica seeks appointment as lead plaintiff alone rather than in a group structure paired with domestic institutions and/or individuals.[3] In the only other instance where Cattolica served as a representative party on behalf of a class under the PSLRA, Cattolica served as one of five members of a lead plaintiff group that was joined by six additional individuals and institutions as named plaintiffs. *See In re Parmalat Securities Litigation*, 2008 WL 3895539, *1 (S.D.N.Y. 2008). In *In re Parmalat*, the Southern District of New York emphasized the problems that could arise if foreign plaintiffs are included in a non-settlement class:

> While the Court already has granted preliminary certification to the proposed class for settlement purposes, the fact that claims of the foreign plaintiffs are subject to an obstacle or impediment not shared by the domestic plaintiffs warrants consideration at the outset. . . . In light of the fact that the Court already has dismissed claims of foreign plaintiffs on grounds common to all such members of such a class or subclass, however, there is a substantial question whether any useful purpose would be served by certifying any class including foreign purchasers for any purpose other than settlement. . . . ***Given the strong likelihood that the inclusion of foreign plaintiffs in any non-settlement class would accomplish little good and create practical***

---

[3] Nevertheless, Courts have noted that a foreign lead plaintiff applicant cannot remedy *res judicata* concerns simply by pairing up with an additional plaintiff with inconsequential losses, particularly where there exists another lead plaintiff applicant with substantial financial interests in the litigation that does not suffer from the same infirmities. *See In re Royal Ahold*, 219 F.R.D. at 353 ("In light of the above considerations-particularly the possible absence of subject matter jurisdiction over Union's claims and the possibility that foreign courts will not enforce a decision in favor of Royal Ahold against foreign plaintiffs in the class-the court finds that Union/Detroit General's status as presumptive lead plaintiff is rebutted.").

8

CASE NO. 2:10-CV-06794-DSF (JEM)
MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

***difficulties, the Court exercises its discretion to modify the proposed class to include only domestic parties*** who purchased or otherwise acquired Old Parmalat securities during the Class Period.

*Id.* At *2-3. Thus, in light of the *res judicata* concerns raised by the courts above, as well as the practical considerations of appointing an Italian fund as a lead plaintiff, this Court should also deny Cattolica's motion to be appointed lead plaintiff. See *Eichenholtz,* 2008 WL 3925289, at *10; *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 104-05 (S.D.N.Y. 2007); *Royal Ahold*, 219 F.R.D. at 352.

### D. Canga's Motion Should Be Denied

Canga's motion should be denied as it has deficiencies preventing him from adequately representing the class. *See In re Cavanaugh*, 306 F.3d at 732 ("The Court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical."). Canga claims a smaller financial interest than either Upfall or Cattolica and his motion should be denied on that basis.

### E. The Court Should Approve Dr. Noel Upfall's Choices of Co-Lead Counsel And Liaison Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to the Court's approval, select and retain counsel to represent the class it seeks to represent. Accordingly, Dr. Upfall has selected Saxena White and R&M to serve as Co-Lead Counsel. As demonstrated in their firm resumes, and given their extensive experience litigating securities class actions and successful prosecution of numerous securities fraud class actions on behalf of injured investors, Saxena White and R&M are more than qualified to act as co-lead counsel.[4] *See* Mem. Law in Supp. Mot. Noel Upfall for Appointment of Lead Pl. and Approval of Selection of Co Lead Counsel, Ex. D. Further, the Court should approve of Dr. Upfall's

---

[4] *See Query v. Maxim Integrated Products, Inc.*, 558 F.Supp.2d 969, 975 (N.D.Cal. 2008) (the court appointed two law firms as co-lead counsel in a securities class action, given their "extensive experience in the area of securities litigation and hav[ing] successfully prosecuted numerous securities fraud actions on behalf of injured investors.").

9

selection of Braun as Liaison Counsel. Braun has significant experience litigating securities class actions and will serve to facilitate the litigation on a local level. Accordingly, Dr. Upfall's selection of Co-Lead and Liaison Counsel should be approved.

### F. Dr. Upfall Will Protect the Best Interests of the Class and Should Be Included as a Lead Plaintiff

As indicated above, Dr. Upfall has demonstrated his commitment to protecting the best interests of the Class and is well-situated to prosecuting this litigation and supervising his chosen counsel. In addition, should the Court share his concerns regarding the adequacy of a foreign plaintiff serving as lead plaintiff on behalf of the Class, he is ready, willing and able to work cooperatively with Cattolica to ensure that the Class is not irreparably harmed if Cattolica is subject to unique defenses at a later stage of the litigation.

Moreover, Dr. Upfall is aware that his chosen counsel, Saxena White, has in the past worked effectively alongside Cattolica's chosen counsel, Glancy Binkow & Goldberg, LLP ("Glancy Binkow"), to successfully prosecute a similar securities shareholder class action. *See In re Atricure, Inc. Securities Litigation*, C.A. No. 1:08-cv-00867 (S.D.Oh.)(Oct. 13, 2010) (Order and Final Judgment approving class action settlement of $2.75 million where Saxena White and Glancy Binkow served as co-lead counsel). Accordingly, Dr. Upfall should be appointed as a lead plaintiff and the Court should approve his selection of lead counsel, or in the alternative, appoint Dr. Upfall and Cattolica as co-lead plaintiffs and Saxena White and Glancy Binkow as co-lead counsel.

### IV. CONCLUSION

For all of the reasons stated above, Dr. Upfall (1) opposes the competing motions submitted by Cattolica and Canga seeking appointment as Lead Plaintiffs and approval of their respective selections of lead counsel; and (2) requests that the

10

Court appoint Dr. Upfall as Lead Plaintiff and approve of his selection of Saxena White and R&M as Co-Lead Counsel, and Braun as Liaison Counsel.

Dated: November 22, 2010     */s/Michael D. Braun*

**BRAUN LAW GROUP**
Michael D. Braun (167416)
service@braunlawgroup.com
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Tel: (310) 836-6000
Fax: (310) 836-6010

*Proposed Liaison Counsel*

Lester Hooker (SBN 241590)
lhooker@saxenawhite.com
Joseph E. White, III
jwhite@saxenawhite.com
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

**RYAN & MANISKAS, LLP**
Richard A. Maniskas
rmaniskas@rmclasslaw.com
995 Old Eagle School Rd., Ste. 311
Wayne, PA 19087
Tel: (484) 588-5516
Fax: (484) 450-2582

*Proposed Co-Lead Counsel and Attorneys for Noel Upfall*

11

CASE NO. 2:10-CV-06794-DSF (JEM)
MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL