| | |
|---|---|
| **SAXENA WHITE P.A.** | **RYAN & MANISKAS, LLP** |
| Joseph E. White, III | Richard A. Maniskas |
| jwhite@saxenawhite.com | rmaniskas@rmclasslaw.com |
| Lester R. Hooker (SBA 241590) | 995 Old Eagle School Rd., Ste. 311 |
| lhooker@saxenawhite.com | Wayne, PA 19087 |
| 2424 N. Federal Hwy, Suite 257 | Tel: (484) 588-5516 |
| Boca Raton, FL 33431 | Fax: (484) 450-2582 |
| Tel: (561) 394-3399 | |
| Fax: (561) 394-3382 | |

*Proposed Co-Lead Counsel for Noel Upfall*

**BRAUN LAW GROUP, P.C.**
Michael D. Braun (167416)
service@braunlawgroup.com
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000
Fax: (310) 836-60106

*Proposed Liaison Counsel*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SID MURDESHWAR, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) Case No. 2:10-cv-06794-DSF (JEM) |
| Plaintiff, | ) ) |
| vs. | ) ) CLASS ACTION |
| SEARCHMEDIA HOLDINGS LIMITED, f/k/a IDEATION ACQUISITION CORP., ROBERT N. FRIED, PHILLIP FROST, RAO UPPALURI, STEVEN D. RUBIN, GLENN HALPRYN, THOMAS E. BEIER, DAVID H. MOSKOWITZ, SHAWN GOLD, GARBO LEE, PAUL CONWAY, QINYING LIU, EARL YEN, and JENNIFER HUANG, | ) ) **REPLY MEMORANDUM OF LAW IN SUPPORT OF DR. UPFALL'S MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL** ) ) Date: December 13, 2010 ) Time: 1:30 PM ) Courtroom: 840 |
| Defendants. | ) |

## I. PRELIMINARY STATEMENT

Proposed Lead Plaintiff Dr. Noel Upfall ("Dr. Upfall") respectfully submits this reply memorandum of law in support of his motion for (1) appointment as Lead Plaintiff in the above-captioned action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and (2) approval of Dr. Upfall's selection of Saxena White P.A. ("Saxena White") and Ryan & Maniskas LLP ("R&M") as Co-Lead Counsel, and Braun Law Group ("Braun") as Liaison Counsel.

## II. INTRODUCTION

Predictably, Cattolica—the movant with the largest financial interest—merely states that its financial loss entitles it to a designation as the most adequate Lead Plaintiff. However, Cattolica has offered nothing to counter Dr. Upfall's serious concerns that Cattolica, as a foreign investor acting alone, can adequately protect the interests of the Class. In addition to the possibility that Cattolica will be subject to a *res judicata* unique defense that could sabotage the viability of the Class claims as the litigation progresses, there also exist practical considerations that direct against appointing an Italian fund as a sole Lead Plaintiff in a securities class action pending in California. Courts from around the country have echoed these same concerns in rejecting Lead Plaintiff applications from foreign investors similar to Cattolica, particularly when there is another viable Lead Plaintiff applicant that is not subject to such considerations.[1]

Dr. Upfall respectfully submits that the drawbacks inherent in having a foreign investor serve as the sole Lead Plaintiff in this litigation far outweigh any

---

[1] *See e.g.*, *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) ("prudence cautions that the [res judicata] arguments for [ ] exclusion are substantial, and in light of that risk it would be improvident to appoint the German Institutional Investor Group as lead plaintiff at this point"); *see also In re Vivendi Universal S.A. Sec. Litig.*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007) (refusing to certify a similarly situated investor under Rule 23, reasoning "plaintiffs have not shown a probability that German courts will give *res judicata* effect to a judgment in this case"); *In re Discovery Labs. Sec. Litig.*, Case No. 2:06-cv-1820, at *5 n.2 (E.D. Pa. July 25, 2006) (denying lead plaintiff motion of a German institutional investor, even though it claimed the largest financial interest, and stating that "the res judicata effect of a judgment in its favor is uncertain.").

purported benefits.  This is especially so considering that Dr. Upfall himself has a considerable financial loss that likely represents a far greater percentage of his investment portfolio than Cattolica's loss, and Dr. Upfall's candidacy does not suffer from the *res judicata* and practical infirmities that plague Cattolica's application.  Moreover, Dr. Upfall is willing to serve as a co-lead plaintiff to preserve the Class claims in the event that unique defenses become an issue later in the litigation with respect to Cattolica.

**III. ARGUMENT**

**A. CATTOLICA IS NOT THE MOST ADEQUATE LEAD PLAINTIFF**

Here, despite the size of Cattolica's claimed losses in its purchases of SearchMedia Holdings Limited ("SearchMedia") securities, Cattolica should not be appointed as a sole Lead Plaintiff as it is a foreign investor and potentially subject to a unique Rule 23 *res judicata* defense that could derail the Class claims at a later point in the litigation.[2]  While there is no *per se* rule against appointing a foreign investor as a lead plaintiff, doing so does come with concerns regarding the potential negative effects such an appointment may have on the Class.[3]  As Dr. Upfall discussed in his opposition brief (*See* Dkt. #17, Upfall Opp. Brf., Section III(C)), numerous courts have held that foreign movants are not the most adequate Lead Plaintiff despite claiming to possess the largest financial interest in comparison to other movants.[4]  Indeed, if Cattolica is appointed as the sole Lead

---

[2] *See Borochoff*, 246 F.R.D. at 204 (noting that the rejection of a foreign investor's lead plaintiff application was largely based on "uncontradicted affidavits that England, the Federal Republic of Germany, Switzerland, *Italy*, and France would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens.")(emphasis added).

[3] *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D.Va. 2003) ("[A] movant's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to represent the class."); see also *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 454-55 (S.D. Tex. 2002) (the court declined to appoint as lead plaintiff the movant with the largest financial losses).

[4] *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *10, n.8 (N.D. Cal. 2008); *Borochoff*, 246 F.R.D. at 205; *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003).

Plaintiff, Defendants will likely argue that this case should not survive the class certification stage of the litigation.

In addition to the *res judicata* concerns described above and in Dr. Upfall's opposition brief, Cattolica's candidacy is also questionable when considering the practical considerations associated with appointing a foreign investor as Lead Plaintiff. Cattolica, an Italian fund, is removed from this litigation by a distance of over 6,000 miles, which may create difficulties in its ability to adequately serve as a class representative at every step of the litigation. Courts have found that movants are inadequate representatives when their availability to attend hearings, trial or deposition is limited.[5] In a similar action, the Northern District of California found that two European Lead Plaintiff applicants could not "fairly and adequately represent the class":

> Finally, both ING and KBC are foreign organizations. They are distant. . . . ***The distances involved and some differences in business culture would impede their ability to manage and to control American lawyers conducting litigation in California***. At trial, the representative plaintiff would normally testify and attend. In a long trial, it would be obviously difficult for ING or KBC to attend in its entirety. . . . ***these factors, when added to the others set forth above, reinforce the Court's conclusion that neither KBC nor ING can fairly and adequately represent the class***.

*In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (emphasis added). Indeed, this Court has noted the importance of a Lead Plaintiff's attendance at litigation proceedings and asked for a representative of a Lead Plaintiff institutional investor to appear at a Lead Plaintiff and lead counsel hearing "to answer any questions the Court may pose." *See Stackhouse v. Toyota Motor Co.*, 2010 WL 3377409, at *2 (C.D.Cal. July 16, 2010) (J. Fischer). As this litigation unfolds, it would be obviously difficult for Cattolica to repeatedly travel to California to fulfill its duties as a class representative. Even if Cattolica could

---

[5] *See Weikel v. Tower Semiconductor Ltd.,* 183 F.R.D. 377, 396-97 (D.N.J. 1998) (finding a movant who required six to seven weeks' notice to testify at trial to be an inadequate class representative) (citing *Cammer v. Bloom,* No. 88-CV-2458, Slip. Op. at 48-49 (D.N.J. August 18, 1989) (potential class representative found inadequate because of possible restrictions in traveling to trial).

manage the impracticalities of participating in a litigation pending in California on a solitary basis, the Class should not have to bear the unnecessary additional expenses or be subject to the additional risk involved in having an Italian investor designated as the lone Lead Plaintiff. Accordingly, the presumption that Cattolica is the most adequate Lead Plaintiff is rebutted in light of the serious concerns that appointing a foreign investor as a sole Lead Plaintiff could prejudice the interests of the Class.

### B. DR. UPFALL WILL FAIRLY AND ADEQUATELY PROTECT THE CLASS

#### 1. Dr. Upfall's Interest In The Litigation Is Substantial

Dr. Upfall has suffered losses on his purchases of SearchMedia common stock during the Class Period of $749,499.76, which is a considerable amount for an individual investor and represents a sizeable financial interest that assures Dr. Upfall's active participation in the litigation. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("The court must examine potential Lead Plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive Lead Plaintiff is found inadequate or atypical.").[6]

Indeed, Dr. Upfall's losses of close to three-quarters of a million dollars likely represent a far greater percentage of his overall investment portfolio than an approximate $2 million loss for a foreign institutional investor such as Cattolica.[7] Thus, the appointment of Dr. Upfall as Lead Plaintiff is entirely in line with the PSLRA's preference that class members with large amounts at stake in the litigation serve in a representative capacity.

---

[6] The remaining movant, Canga, claims a much smaller financial interest than Dr. Upfall and his motion should be denied on that basis.

[7] In calculating its financial losses, Cattolica included those losses incurred from warrants of $1,119,960, in addition to common stock losses totaling $1,282,916. Comparing Upfall's common stock losses of approximately $750,000 to Cattolica's common stock losses, the alleged difference shrinks dramatically.

Dr. Upfall is a general family physician based in Highland Park, Michigan who is a sophisticated investor perfectly capable of representing the best interests of the Class. Appointing as Lead Plaintiff a U.S.-based doctor who is devoid of any unique defenses, who possesses a substantial financial interest in the outcome of the litigation, and who has demonstrated a willingness and ability to vigorously prosecute this action on behalf of the Class, ensures that Class members' interests are adequately protected by an active and interested representative. The interests of the Class are of utmost concern and Dr. Upfall is willing to serve alongside Cattolica as a co-lead plaintiff in order to ensure that the Class claims are preserved in the face of any future attacks by Defendants on Cattolica's ability to serve as class representative.

### 2. Dr. Upfall's Choice of Counsel Should Be Approved

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to the Court's approval, select and retain counsel to represent the class it seeks to represent. Accordingly, Dr. Upfall has selected Saxena White and R&M to serve as Co-Lead Counsel. As demonstrated in their firm resumes, and given their extensive and successful experience litigating securities class actions on behalf of injured investors, Saxena White and R&M are more than qualified to act as co-lead counsel.[8] Further, appointing Braun as liaison counsel is entirely consistent with the efficient and effective prosecution of the action on behalf of the Class as Braun has significant experience litigating securities class actions and will serve to facilitate the litigation on a local level.

While Canga conspicuously criticizes Dr. Upfall's chosen co-lead counsel structure, this criticism rings hollow as courts around the country have recognized the propriety of appointing co-lead counsel to prosecute complex securities class actions. *See*, *e.g.*, *In re Bank of America Corp. Sec., Derivative, and ERISA Litig.*,

---

[8] *See* Dkt. #8-2, Declaration of Joseph E. White III In Support of Motion to Appoint Noel Upfall as Lead Plaintiff and Approve Lead Plaintiff's Choice of Co-Lead Counsel, Ex. D.

258 F.R.D. 260, 273 (S.D.N.Y. 2009) (in finding a lead counsel structure appropriate where Saxena White and another law firm served as co-lead counsel, the court noted that the appointment of multiple law firms to serve as co-lead counsel rather than one law firm is "routine and widely accepted," particularly in complex cases that involve "many different defendants and complicated issues.").[9] Indeed, this Court has also appointed co-lead counsel in other similar securities class actions, and has recognized the benefits that can be derived from appointing a co-lead counsel structure.[10]

In addition, should the Court appoint Dr. Upfall as a co-lead plaintiff in the action alongside Cattolica in order to ensure that Class claims are adequately protected moving forward in the litigation, doing so would ensure that a diverse representation that includes both an individual and institutional investor will adequately represent the interests of all Class members:

> Allowing for diverse representation, including in this case a state pension fund, ***significant individual investors*** and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.

*In re Oxford Health Plans, Inc. Securities Litigation*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (emphasis added). Moreover, Dr. Upfall's and Cattolica's respective lead counsel, Saxena White and Glancy, Binkow & Goldberg LLP ("Glancy Binkow"), have already demonstrated an ability to effectively and efficiently work together as

---

[9] *See also Query v. Maxim Integrated Products, Inc.*, 558 F.Supp.2d 969, 975 (N.D. Cal. 2008) (the court appointed two law firms as co-lead counsel in a securities class action, given their "extensive experience in the area of securities litigation and hav[ing] successfully prosecuted numerous securities fraud actions on behalf of injured investors."); *City of Ann Arbor Employees' Retirement System v. Accuray, Inc.*, 2009 WL 3517667, *3 (N.D. Cal. 2009) (appointing co-lead counsel); *In re Lernout*, 138 F. Supp. 2d at 46 (appointing co-lead counsel in a securities class action because "in light of the complexity of this litigation, the amount of money at stake, the parties involved . . . the plaintiff class may need the resources of three firms to handle such litigation").

[10] *See*, *e.g.*, *Yanek*, 2004 WL 5574358 at *8 (appointing co-lead counsel); *Takeda v. Turbodyne Technologies, Inc.*, 67 F.Supp.2d 1129, 1139 (C.D. Cal. 1999) (appointing co-lead counsel and noting that "the geographical diversity of the three co-Lead Counsel should add to, rather than detract from, the efficient handling of this case").

1 co-lead counsel in a securities fraud class action. *See In re Atricure, Inc. Securities Litigation*, C.A. No. 1:08-cv-00867 (S.D. Oh.) (Oct. 13, 2010).[11] Accordingly, Dr. Upfall respectfully submits that appointing a co-lead counsel structure presents no danger of duplication of efforts and will promote the vigorous prosecution of the action by counsel experienced in successfully litigating securities fraud class actions.

## IV. CONCLUSION

For all of the reasons stated above and in his previous submissions in support of his motion for appointment as Lead Plaintiff, Dr. Upfall respectfully requests that the Court appoint Dr. Upfall as Lead Plaintiff and approve of his selection of Saxena White and R&M as Co-Lead Counsel, and Braun as Liaison Counsel.

---

[11] If the Court appoints both Dr. Upfall and Cattolica as co-lead plaintiffs, Dr. Upfall respectfully submits that the Court appoint Saxena White and Glancy Binkow as co-lead counsel as the firms are well-positioned to work cohesively, vigorously and without unnecessary duplication of efforts in furtherance of the Class claims.

| | |
|---|---|
| Dated: November 29, 2010 | */s/Michael D. Braun* |

**BRAUN LAW GROUP**
Michael D. Braun (167416)
service@braunlawgroup.com
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Tel: (310) 836-6000
Fax: (310) 836-6010

*Proposed Liaison Counsel*

Lester Hooker (SBN 241590)
lhooker@saxenawhite.com
Joseph E. White, III
jwhite@saxenawhite.com
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

**RYAN & MANISKAS, LLP**
Richard A. Maniskas
rmaniskas@rmclasslaw.com
995 Old Eagle School Rd., Ste. 311
Wayne, PA 19087
Tel: (484) 588-5516
Fax: (484) 450-2582

*Proposed Co-Lead Counsel and Attorneys for Noel Upfall*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 29th day of November, 2010, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s//Michael D. Braun*
Michael D. Braun